# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:  RONALD STANDIFERD and                      No. 7-00-16958 MA
BETTY ANN STANDIFERD,

        Debtors.
_____

UNITED STATES TRUSTEE,

        Plaintiff,

v.                                                 Adversary No. 07-1076

RONALD STANDIFERD and
BETTY ANN STANDIFERD,

        Defendants.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Following a trial on the merits, the Court took the matter under advisement to consider

whether the evidence supports Plaintiff's claims to deny the Defendants' discharge under 11

U.S.C. § 727(a)(2)(B), 11 U.S.C. § 727(a)(4)(D), 11 U.S.C. § 727(a)(6)(A), and/or 11 U.S.C. §

727(a)(5).[1]  Defendants initially filed their case under Chapter 13, but voluntarily converted to

_____

[1]These code sections provide:
        The court shall grant the debtor a discharge, unless --
                (2) the debtor, with intent to hinder, delay, or defraud a creditor or an
officer of the estate charged with custody of property under this title, has transferred, removed,
destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed,
mutilated or concealed --
                (B) property of the estate, after the date of the filing of the petition;
                (4) the debtor knowingly and fraudulently, in or in connection with the
case --
                        (D) withheld from an officer of the estate entitled to possession
                        under this title, any recorded information, including books,
                        documents, records, and papers, relating to the debtor's
                        property or financial affairs;

1

Chapter 7 nearly six years later, after the Chapter 13 Trustee filed a second motion to dismiss.[2]

All actions that form the basis of the Plaintiff's claims took place during the pendency of the

Defendants' Chapter 13 proceeding, before they  converted their case to Chapter 7.   Defendants

assert that 11 U.S.C. § 727 has no application to actions that occur while a case is pending under

Chapter 13, arguing that the only remedy for a debtor's bad acts during a Chapter 13 proceeding

is dismissal or revocation of the order confirming the chapter 13 plan.   In other words,

Defendants contend that they are not subject to the harsh punishment of a denial of discharge

under 11 U.S.C. § 727 when the alleged improprieties did not occur during the Chapter 7 phase

of their bankruptcy case.

   This Court rejects Defendants' argument.  Upon conversion of the case to Chapter 7,

Defendants are subject to all provisions of contained in Chapter 7 of Title 11, including the

discharge provisions contained in 11 U.S.C. § 727.   Defendants are ineligible to receive a

discharge if they have violated 11 U.S.C. § 727, even if the violations occurred while their case

was pending under Chapter 13.  Because Defendants concealed the profits received from S & S

Joint Venture and wilfully failed to file operating reports or provide the Chapter 13 Trustee with

tax returns in violation of the order confirming their Chapter 13 plan, the Court finds that the

---

       (5) the debtor has failed to explain satisfactorily, before determination of
denial of discharge under this paragraph, any loss of assets or deficiency
of assets to meet the debtor's liabilities;
       (6) the debtor has refused, in the case --
         (A) to obey any lawful order of the court, other than an order to
         respond to a material question or to testify;
11 U.S.C. § 727(a)(2)(B), (a)(4)(D), and (a)(6)(A).

  [2]*See* Case No. 13-00-16958 MA: Docket # 102 - Motion to Dismiss; Docket # 123 -
Motion to Dismiss; Docket # 129  - Notice of Voluntary Conversion to Chapter 7.

Defendants' discharge should be denied under 11 U.S.C. § 727(a)(2)(B) and/or (a)(6)(A).

Alternatively, even if the assets at issue technically do not constitute property of the converted

Chapter 7 bankruptcy estate under 11 U.S.C. § 348(f), Defendants committed bad acts during

the pendency of their bankruptcy proceeding that warrant dismissal of their case without the

entry of a discharge in accordance with 11 U.S.C. § 707(a).

FINDINGS OF FACT

1.    Defendants Ronald Hugh Standiferd and Betty Ann Standiferd ("Defendants") filed a

voluntary petition under Chapter 13 of the Bankruptcy Code on December 28, 2000.

2.    Defendants filed two plans: Chapter 13 plan dated January 12, 2001 and the first

amended Chapter 13 plan dated February 8, 2001.  *See* Case No. 7-00-16958 MA, Docket No. 6

and Docket No. 24; UST Exhibits 4 and 5.   The plan and the amended plan proposed to

contribute non-exempt tax refunds to the plan for distribution of creditors.  *Id.*

3.    The amended plan provided for payments of $470.00 per month for thirty-six months,

and further provided for payment of 100% of the allowed unsecured claims.  *Id.*  The monthly

plan payments called for under the plan were insufficient to pay 100% of allowed unsecured

claims.   Defendants hoped to fund the shortfall with proceeds from litigation against Mr.

Standiferd's former business partners, identified as claims against Tafoya and Trujillo on

Defendants' Schedule B, and listed in their amended plan as a $400,000 account receivable.[3]  *See*

UST Exhibits 1 and 5.

4.    An order confirming the first amended plan was entered on January 15, 2002

---

[3]Defendants eventually did not pursue their claims against Mr. Tafoya.  The litigation
was terminated sometime in 2003.

("Confirmation Order").  *See* Case No. 7-00-16958 MA, Docket No. 71; UST Exhibit 6.

    5.   The Confirmation Order contained the following terms:

> a. that if the Debtors engage in business, monthly operating reports shall be filed;
> b. that the trustee may object to any discharge of a plan which pays less than 100%;
> c. that Debtors shall timely file all tax returns due during the life of the plan, and send a copy to the trustee.  Debtors shall pay any tax refunds, both federal and state, into the plan for the full life of the plan; and
> d. that Debtors agree that in the event Debtor receives any bonuses, he will notify the Chapter 13 trustee of his receipt of the bonus with documentation showing the exact amount received.  The documentation shall be sent with a cover letter clearly stating that it is being sent pursuant to the order of confirmation.  Debtors further agree to pay sixty percent (60%) of the gross value of any bonus in addition to their regular payment due for that particular month.

Confirmation Order, ¶¶ 7., 10., 11., and 12.

    6.   Defendants received a copy of the Confirmation Order and understood that they were required to provide copies of their tax returns to the Chapter 13 Trustee.  *See* UST Exhibit 43 - Transcript from § 341 Meeting of Creditors held 3/5/07, p. 11, lines 16- 17 ("We provided those [tax returns] to the Court every year in the Chapter 13 anyway.").

    7.   At the time the Defendants filed their Chapter 13 proceeding, Defendant Ronald Standiferd was employed by Global Structures.

    8.   Post-petition, Defendant Ronald Standiferd lost his job with Global Structures and was unemployed for a period of approximately four months.

    9.   Defendant Ronald Standiferd obtained employment with STKX Construction, Inc. in May or June of 2002.

    10.  In July of 2002, Defendant Ronald Standiferd, d/b/a Standiferd and Sons Company, and STKX Construction, Inc. formed a partnership called S & S Joint Venture.   *See* UST

Exhibit 8.

11.  In November of 2004, Defendant Ronald Standiferd formed a corporation called Standiferd and Sons, Inc.  *See* UST Exhibit 20.  The purpose of Standiferd and Sons, Inc. was to serve as the substituted partner in S & S Joint Venture, and to receive profits from the operation of the S & S Joint Venture.

12.  Defendant received wages from his employment with STKX Construction, Inc. in addition to the income he received from the operation of S & S Joint Venture.  *See, e.g.,* UST Exhibit 10 - 2003 W-2 reflecting wages of $52,000 from STKX Construction, Inc.; UST Exhibit 10 - 2004 W-2 reflecting wages of $48,000 from STKX Construction, Inc.; UST Exhibit 32 - 2003 Tax Return reflecting partnership income from S & S Joint Venture; UST Exhibit 33 - 2004 Tax Return reflecting partnership income from S & S Joint Venture.

13.  Defendant Ronald Standiferd received the following checks from S & J Joint Venture, representing bonuses or profits from S & S Joint Venture during the year 2003:

> Check No. 1074 dated 10/24/03 for $5,000.00
> Check No. 1106 dated 11/25/03 for $5,000.00
> Check No. 1145 dated 12/23/03 for $5,000.00
>
> Total:  $15,000.00

> *See* UST Exhibit 13.

14.  Defendant Ronald Standiferd received the following checks from S & S Joint Venture representing profits from S & S Joint Venture during the year 2004:

> Check No. 1188 dated 1/12/04 for $5,000.00
> Check No. 1198 dated 1/28/04 for $11,000.00
> Check No. 1237 dated 2/13/04 for $5,000.00
> Check No. 1277 dated 3/15/04 for $5,000.00
> Check No. 1335 dated 4/12/04 for $44,000.00
> Check No. 1342 dated 4/16/04 for $10,000.00

5

Check No. 1424 dated 6/11/04 for $20,000.00

Total:        79,000.00

*See* UST Exhibit 14 and UST Exhibit 18; Defendants' Exhibit E.

15.   Defendant Ronald Standiferd received a check from S & S Joint Venture in the amount of $20,000.00 representing his share of the profits from S & S Joint Venture during the year 2005. *See* UST Exhibit 18 - Check No. 2009 dated 4/29/05 for 20,000.00.

16.   The profit checks Defendant Ronald Standiferd received from S & S Joint Venture were in addition to the salary/wages he received from his employment.

17.   Defendant Betty Standiferd historically has handled the Defendants' finances.

18.   Defendants spent the majority of the profits received from S & S Joint Venture on home improvements.

19.   The Chapter 13 Trustee filed a Motion to Dismiss on May 16, 2003 ("First Motion to Dismiss"). *See* Case No. 00-07-16958 MA - Docket No. 102.    The cause for dismissal cited by the Chapter 13 Trustee in the First Motion to Dismiss was the Defendants' failure to provide copies of tax returns to the Chapter 13 Trustee and/or failure to contribute tax refunds to the plan as required by the Confirmation Order. *Id.*

20.   In June of 2003, the Defendants sought to modify their plan to waive the requirement to contribute tax refunds. *See* Case No. 00-07-16958 MA, Motion to Modify Chapter 13 Plan to Waive Tax Refund Requirement ("Motion to Waive Refund Requirement") -  Docket No. 105. The Motion to Waive Refund Requirement stated that Defendant Ronald Standiferd was unemployed for the period from April 2002 until July 2002 and incurred certain expenses during that time and requested that the requirement to contribute tax refunds to the plan be waived for

6

2001 and 2002. *Id.*

21. The First Motion to Dismiss was denied and the Motion to Waive Refund Requirement was granted by stipulation of the parties. *See* Case No. 13-00-16958 MA; Stipulated Order Denying Chapter 13 Trustee's Motion to Dismiss and Granting Debtors' Motion to Modify Chapter 13 Plan to Waiver Tax Refund Requirement ("Stipulated Order") - Docket No. 116. The Stipulated Order acknowledges that the Defendants received $3,907 from tax refunds in 2001 and 2002 and directs that payment of $3,907 representing tax refunds is deferred until the end of the plan term in the event the plan does not otherwise result in payment of 100% of unsecured claims. *Id.* Defendants provided the Chapter 13 Trustee with a copy of their 2002 tax return.

22. The Chapter 13 Trustee filed a second Motion to Dismiss ("Second Motion to Dismiss") on October 16, 2006. *See* Case No. 00-07-16958 MA - Docket No. 123. The Second Motion to Dismiss alleged several grounds for dismissal, including: failure to provide accounting of bonus income; failure to provide copies of tax returns to the Chapter 13 Trustee; and failure to contribute tax refunds to the plan. *Id.*

23. The Chapter 13 Trustee sent reminder letters to Defendants regarding Defendants' obligation to provide the Chapter 13 Trustee with copies of their tax returns.

24. Defendants voluntarily converted their bankruptcy proceeding to Chapter 7 on October 22, 2006. *See* Case No. 7-00-16958 MA -Docket No. 129.

25. Following the conversion of Defendants' bankruptcy case to Chapter 7, Defendants filed an Amended Schedule F. *See* Case No. 7-00-16958 MA -Docket No. 134.

26. Defendants filed Amended Schedules A, B, C, and D in May of 2007. *See* Case No.

7

7-00-16958 MA -Docket Nos. 161 and 162. Amended Schedule B lists 100% ownership

interests in Standiferd & Sons LLC and Sands Construction LLC.

27. At the § 341 meeting conducted by the Chapter 7 trustee Defendant Ronald

Standiferd acknowledged that Defendants were required to report business income to the Chapter

13 Trustee. *See* UST Exhibit 42 - Transcript from § 341 Meeting of Creditors held 1/18/07, p.

20, line 6.

28. Defendants' 2003 tax return reflects income from S & S Joint Venture in the amount

of $70,352. *See* UST -  Exhibit 32.

29. Defendants' 2004 tax return reflects income from S & J Joint Venture in the amount

of $44,854. *See* UST - Exhibit 33.

30. Defendants never filed monthly operating reports in their bankruptcy proceeding.

31. Defendants never informed the Chapter 13 Trustee about the formation or operation

of S & S Joint Venture.

32. Defendants never reported the business profits or bonuses received from S & S Joint

Venture to the Chapter 13 Trustee.

33. Defendants never provided copies of tax returns to the Chapter 13 Trustee for tax

years 2003, 2004, or 2005.

CONCLUSIONS OF LAW

Defendants' primary argument is that 11 U.S.C. § 727 has no application to Chapter 13

proceedings, so that they cannot suffer a denial of their Chapter 7 discharge premised upon

alleged bad acts that occurred during the time their case was pending under Chapter 13.

Defendants cite no case law in support of their position.   Instead, they cite to 11 U.S.C. § 103

8

which provides that "[s]ubchapters I and II [which includes 11 U.S.C. § 727] of chapter 7 of this title apply only in a case under such chapter[.]" 11 U.S.C. § 103(b).   Similarly, 11 U.S.C. § 103(I) provides that "Chapter 13 of this title applies only in a case under such chapter."  11 U.S.C. § 103(I).    In *Baker v. Rank (In re Baker),* 154 F.3d 534 (5th Cir. 1998), the Fifth Circuit flatly rejected a similar argument that § 727 does not apply to Chapter 13, pointing out that 11 U.S.C. § 727(a)(2)(B) applies to "property of the estate, after the date of the filing of the petition" and that 11 U.S.C. § 348(a) and (b)[4], "taken together, specifically incorporate 11 U.S.C. § 727(b) and permit contests of discharge in a converted case."  *Baker,* 154 F.3d at 538 (citing *Bank of La. v. Pavlovich (In re Pavlovich),* 952 F.2d 114, 117 (5th Cir. 1992)).

   In *Baker,* the bankruptcy court denied the debtors' discharge under 11 U.S.C. § 727(a)(2)(B) because the debtors hindered their creditors by using post-petition income (in the form of an $11,700 contingent fee) earned during the Chapter 13 phase of their proceeding to take a personal vacation prior to the conversion to Chapter 7.  *Id.*  The Fifth Circuit affirmed this result based in large part upon its interpretation of 11 U.S.C. § 348 prior to the 1994 amendment that added subsection (f) to resolve the split among the circuits as to what constitutes property of the estate in a converted case.  Based on 11 U.S.C. § 541(a)(7), which includes within property

---

[4]Subsections (a) and (b) of 11 U.S.C. § 348 provide, in relevant part:
   (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.
   (b) Unless the court for cause orders otherwise, in section[ ] . . . 727(b) . . . of this title, 'the order for relief under this chapter' . . . [in a case converted from Chapter 13] means the conversion of such case to such chapter.
11 U.S.C. § 348(a) and (b).

of the estate "[a]ny interest in property that the *estate* acquires after the commencement of the case", the *Baker* court concluded that "all post-petition income of the Chapter 13 estate remains property of the estate upon conversion to Chapter 7." *Baker* 154 F.3d at 537. Inasmuch as 11 U.S.C. § 348(f), added as part of the Bankruptcy Reform Act of 1994, now defines property of the converted estate, *Baker* cannot be relied upon to conclude that the post-petition, pre-conversion profits of S & S Joint Venture received by the Defendants constitute property of the Defendants' Chapter 7 bankruptcy estate. *See EconoLube N' Tune, Inc. v. Frausto (In re Frausto),* 259 B.R. 201, 209 (Bankr. N.D.Ala. 2000)(noting that *Baker* which "expressly involved the issue of whether post-confirmation property . . . became property of the estate in the converted case . . . . [has] been superceded, for precedential purposes, by section 348(f).").

Property of the Chapter 7 estate following conversion from Chapter 13 is defined by 11 U.S.C. § 348(f) which provides, in relevant part:

> (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title --
>
> > (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
> > . . . .
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f)(1) and (2).

The United States Trustee complains of certain post-petition payments the Defendants received from the business operations of S & S Joint Venture that were not reported to the Chapter 13 trustee in monthly operating reports or otherwise. These payments constituted property of the Chapter 13 estate by virtue of 11 U.S.C. § 1306 as post-petition income of the

Defendants. However, 11 U.S.C. § 348(f)(1) plainly excludes post-petition property of the Chapter 13 estate from the estate of the converted Chapter 7 case. *See In re Stamm,* 222 F.3d 216, 218 (5th Cir. 2000) ("Section 348(f)(1)(A) establishes that property acquired after the Chapter 13 filing . . . is not part of the converted estate.") (citations omitted).

Section 348(f)(2) provides an exception to the exclusion of post-petition property from the converted Chapter 7 estate when debtors convert in bad faith. "If the debtor converts a case under Chapter 13 to a case under Chapter 7 . . . in bad faith, the property in the converted case shall be extended to include property of the estate as of the date of conversion." *In re Siegfried,* 219 B.R. 581, 584 (Bankr.D.Colo. 1998) (citing 11 U.S.C. § 348(f)(2)). Bad faith conversion under 11 U.S.C. § 348(f)(2) must be determined based upon the specific facts and circumstances of the case, including whether there has been "fraud, deception, dishonesty, lack of disclosure of financial acts or an abuse of the provisions, purpose or spirit of the law." *Id.* at 587.

Plaintiff did not argue that the Court should apply 11 U.S.C. § 348(f)(2). But by filing a complaint objecting to discharge in Defendants' converted Chapter 7 proceeding, Plaintiff implicitly asserts that Defendants converted their case in bad faith. Defendants failed to report the profits from S & S Joint Venture to the Chapter 13 Trustee by filing operating reports or otherwise. Instead, they spent the money received from S & S Joint Venture on home improvements before converting their case to Chapter 7. Such conduct evidences a "failure to fully or accurately disclose financial affairs" and is sufficient to base a finding that the Defendants converted their case in bad faith, especially when considered in view of Defendants' failure to provide copies of tax returns which would have revealed the income to the Chapter 13 Trustee. *Siegfried,* 219 B.R. at 585.

11

Application of 11 U.S.C. § 348(f)(2) to the facts of this case, however, does little to sustain Plaintiff's claims under 11 U.S.C. § 727(a)(2)(B). Defendants spent the profits from S & S Joint Venture on home improvements prior to the conversion of their case to Chapter 7. Section 348(f)(2) provides that any appreciation in the value of Defendants' home becomes property of the converted Chapter 7 estate. *See In re Perez,* 345 B.R. 137, 141 (Bankr.D.Del. 2006)(acknowledging that under 11 U.S.C. § 362(f)(2), post-petition, pre-conversion earnings and appreciation of property become property in the converted Chapter 7 case upon a finding that debtors converted their case in bad faith). But Plaintiff does not seek to liquidate Defendants' home for the benefit of creditors. Rather, the focus of Plaintiff's claims under 11 U.S.C. § 727(a)(2)(B) is Defendants' disposition of the S & S Joint Venture profits during the Chapter 13 phase of the proceeding. Defendants no longer had those funds in their possession as of the conversion date; consequently, the profits from S & S Joint Venture technically do not constitute property of the converted Chapter 7 bankruptcy estate under 11 U.S.C. § 348(f)(2).

In *Wyss v. Fobber (In re Fobber),* 256 B.R. 268 (Bankr.E.D.Tenn. 2000), the Chapter 7 trustee sought to revoke the debtors' discharge under 11 U.S.C. § 727(d) based on the debtors' disposition of a tractor during the Chapter 13 phase of their bankruptcy proceeding. Debtors filed a motion to dismiss the complaint for failure to state a claim, asserting that, by operation of 11 U.S.C. § 348(f) the tractor was not property of the Chapter 7 estate. *Id.* The *Fobber* court rejected the debtors' contention that the proceeds from the sale of the tractor, which debtors distributed to creditors during the Chapter 13 phase of the proceeding, could not be property of the Chapter 7 estate because neither the tractor nor its proceeds were in the debtors' possession at the time the case converted. *Fobber* 256 B.R. at 276. *Fobber* reasoned that literal application

12

of § 348(f)(1)(A) would lead to an absurdity because "the very act which generally would form the basis for the denial or revocation of discharge, i.e., disposition of property of the estate, would insulate the debtor from liability." *Id.*

*Fobber* is clearly distinguishable from the instant case because the property at issue in *Fobber* that the debtors improperly disposed of during the Chapter 13 phase of their proceeding was property that the debtors owned as of the petition date.[5] *See Fobber,* 256 B.R. at 278 (concluding that "the property acquired by the debtors during the chapter 13, i.e., the sale proceeds, became property of the estate, not because of the chapter 13 and the expanded definition of property of the estate but because it was proceeds of property held by the debtors at the bankruptcy case's commencement."). Nevertheless, *Fobber* recognized that strict application of 11 U.S.C. § 348(f) would "thwart any attempt by a chapter 7 trustee to challenge a debtor's fraudulent disposition of property which came into the estate solely because of the expansive definition of property of the estate provided by § 1306(a)." *Fobber,* 256 B.R. at 279 n.6. Consequently, the *Fobber* court was "convinced that § 348(f) was never designed to be a safe harbor for debtors who fraudulently and surreptitiously dispose of property of the estate while in chapter 13." *Id.* at 279. This Court agrees.

Ordinarily the Court is bound to enforce a statute in accordance with the plain meaning of its terms.[6] The Court may look beyond the language of the statute if "(1) a literal application

---

[5]The Fobbers initially filed their case under Chapter 7, converted to Chapter 13, and then reconverted to Chapter 7.

[6]*See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(when the Court determines that the statutory language is plain, "the sole function of the courts is to enforce it according to its terms.").

13

of the statutory language would be at odds with the manifest intent of the legislature; (2) a literal application of the statutory language would produce an absurd result; or (3) the statutory language is ambiguous." *In re Wilbur,* 344 B.R. 650, 653 (Bankr.D.Utah 2006)(citations omitted).[7] "[E]ven when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." *United States v. American Trucking Ass'n,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940)(quoting *Ozawa v. United States,* 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922) (remaining citation omitted)). Applying 11 U.S.C. § 348(f) to prevent a Chapter 7 trustee from pursuing a claim to deny a debtor's discharge under 11 U.S.C. § 727(a)(2) would lead to absurd results because it would allow debtors to hinder their creditors during a Chapter 13 without any consequence if they subsequently convert their case to Chapter 7.

One of the policies furthered by 11 U.S.C. § 348(f)'s exclusion of post-petition property from the converted Chapter 7 estate was to encourage debtors to attempt repayment through a Chapter 13 plan and not penalize them when they are not able to complete their payments.[8] But

---

[7]*See also, In re Beautyco, Inc.,* 307 B.R. 225, 229 (Bankr.N.D.Okla. 2004)("Court should only consider alternative interpretations when the literal application of the statute would produce an absurd or unreasonable result, or if the literal application of the statute is demonstrably at odds with the intentions of the statute's drafters.")(citing *Holy Trinity Church v. United States,* 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892) and *United States v. American Trucking,* 310 U.S. at 543).

[8]The legislative history to § 348(f) indicates that it adopted the reasoning of *In re Bobroff,* 766 F.2d 797, 803 (3rd Cir. 1985), which determined that property which becomes property of the chapter 13 estate under 11 U.S.C. § 1306(a) does not become part of the chapter 7 estate upon conversion. *See Fobber,* 256 BR at 277 (citing H.R. REP. No. 103-834, at 42-43 (1994); 140 Cong. Rec. H10752-01; H10770-71 (daily ed. Oct. 4, 1994)). The *Bobroff* reached its conclusion by reasoning as follows:

14

when a debtor actively conceals property that would have been available to creditors during the chapter 13 plan, the debtor should not be able to escape the serious consequence of a denial of discharge simply by converting to Chapter 7. Such a result would be absurd and contrary to the overriding bankruptcy policy of providing discharge relief only to honest, but unfortunate debtors.[9] Under the circumstances of this case, where the application of 11 U.S.C. § 348(f)(1) would allow the Defendants to escape scrutiny under 11 U.S.C. § 727, and where the exception contained in 11 U.S.C. § 348(f)(2) fails to effectuate its intended consequence, the Court finds that 11 U.S.C. § 348 does not prevent a trustee from seeking to deny the Defendants' discharge under 11 U.S.C. § 727 in a converted Chapter 7 proceeding based on actions taken by the Defendants while their case was pending under Chapter 13. This result does not undermine the legislative intent behind 11 U.S.C. § 348.

Even though Defendants received the profits from S & S Joint Venture post-petition, after their Chapter 13 proceeding had been pending for some time, Defendants' plan proposed payment of 100% to all unsecured creditors. Creditors' expectations under the plan were to

---

If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if a chapter 13 proves unavailing, the incentive to give chapter 13- which must be voluntary - a try would be greatly diminished. Conversely, when chapter 13 does prove unavailing, "no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts . . ."

*Bobroff,* 766 F.2d at 803 (quoting *In re Hannan,* 24 B.R. 691, 692 (Bankr.E.D.N.Y. 1982)).

[9]*See Grogan v. Garner,* 498 U.S. 279, 286-287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)("[T]he Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate' debtor.'")(quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

15

receive full payment, and the profits from S & S Joint Venture should have been used to pay

them. *See* Confirmation Order, ¶ 5.d (requiring Defendants to contribute of 60% of any bonus

received to the plan).   By failing to report the profits from S & S Joint Venture to the Chapter 13

trustee or contribute them to the plan, Defendants benefitted themselves to the detriment of their

creditors.   Such actions taken during the Chapter 13 phase of the proceeding should not go

unchecked just because the Defendants convert their case to Chapter 7.

In addition, other provisions in 11 U.S.C. § 727 governing denial of discharge do not

involve  property of the estate. *See, e.g.,* 11 U.S.C. § 727(a)(3) (failure to keep and preserve

recorded information regarding the debtor's financial condition); 11 U.S.C. § 727(a)(4) (false

oath or account made in connection with the case); 11 U.S.C. § 727(a)(5) (failure to explain loss

of assets).  Based on the foregoing, the Court finds that 11 U.S.C. § 727 applies to actions taken

during the Chapter 13 phase of a debtor's converted bankruptcy case.   The Court will examine

the facts in light of the elements necessary to Plaintiff's claims to deny Defendants' discharge.

### § 727(a)(2)(B) - Post-petition Removal/Concealment of Estate Property with Intent to Hinder, Delay, or Defraud Creditors

Pursuant to 11 U.S.C. § 727(a)(2)(B), the Court will not grant the debtor a discharge if

the debtor has transferred or concealed property of the estate after the petition date with intent to

hinder, delay, or defraud a creditor or officer of the estate.  11 U.S.C. § 727(a)(2)(B).  To prevail

under 11 U.S.C. § 727(a)(2)(B), the Plaintiff must establish each element by a preponderance of

evidence. *Colonial Bank v. Johnson (In re Johnson),* 301 B.R. 590, 596 (Bankr.N.D.Ala.

2003)(burden of proof is on plaintiff to prove all elements of an action under 11 U.S.C. § 727 by

a preponderance of evidence).  Denial of discharge under 11 U.S.C. § 727(a)(2)(B) requires

actual intent to hinder, delay, or defraud a creditor of officer of the estate. *Johnson v. Johnson*

16

*(In re Johnson),* 387 B.R. 728, 749 (Bankr.S.D.Ohio 2008).

Fraudulent intent may be inferred based upon the surrounding facts and circumstances. *In re Searles,* 317 B.R. 368, 379 (9th Cir. BAP 2004), *aff'd,* 212 Fed.Appx. 589 (9th Cir. 2006)("'intent' to hinder, or to delay, or to defraud the trustee . . . is a question of fact that requires the trier of fact to delve into the mind of the debtor and may be inferred from surrounding circumstances.")(citation omitted). The debtor's course of conduct is relevant to this inquiry. *Id.* at 380; *Hunter v. Sowers (In re Sowers),* 229 B.R. 151, 157 (Bankr.N.D.Ohio 1998)("Although actual intent is difficult to prove directly, it may be established by circumstantial evidence or inferred from the debtor's conduct.")(citations omitted). "Concealment" within the meaning of 11 U.S.C. § 727(a)(2)(B) "simply means withholding knowledge of an asset by the failure or refusal to divulge owed information." *Sowers,* 229 B.R. at 156 (citing *In re Martin,* 698 F.2d 883 (7th Cir. 1983)). A reckless indifference for the truth can also serve to satisfy the intent requirement under 11 U.S.C. § 727(a)(2)(B). *See Retirement Company, LLC v. Heil (In re Heil),* 289 B.R. 897, 908 (Bankr.E.D.Tenn. 2003)(concluding that the cumulative evidence established fraudulent intent, or at a minimum reckless indifference for the truth, "which is a requisite for each section [727(a)(2)(A), §727(a)(2)(B) and § 727(a)(4)(A)].").[10] The underlying purpose of 11 U.S.C. § 727(a)(2)(B) is "to deny discharge to a debtor who 'fails to disclose transactions regarding his assets subsequent to filing his petition for bankruptcy.'" *Johnson,* 387 B.R. at 749 (quoting *Sicherman v. Rivera (In re Rivera),* 338

_____

[10]*See also Rajala v. Majors (In re Majors),* 330 B.R. 880, *3 (10th Cir. BAP 2005)(Table)(unreported)(stating that "'[r]eckless indifference to the truth,' such as failing to list substantial assets . . . , is considered the equivalent of intentional fraud under §727(a)(2)."(citing *Lorenz v. Chambers (In re Chambers),* 36 B.R. 791, 793 (Bankr.W.D.Ky. 1984)).

17

B.R. 318, 328 (Bankr.N.D.Ohio 2006)(quoting *In re Caserta,* 182 B.R. 599, 606 (Bankr.S.D.Fla. 1995)).

Plaintiff contends that Defendants concealed the profits of S & S Joint Venture with intent to hinder, delay, or defraud creditors and the trustee. The evidence establishes, and Defendants do not dispute, that they received $100,000 in addition to wages from employment which they did not report to the Chapter 13 trustee. The Confirmation Order required the Defendants to pay 60% of any bonus received towards plan payments and to provide copies of their tax returns to the Chapter 13 Trustee. By failing to provide copies of the tax returns which would have revealed their business income, the Court infers that Defendants concealed the profits from S & S Joint Venture with intent to hinder, delay, or defraud their creditors. Similarly, their failure to file operating reports as required under the terms of the Confirmation Order evidences, at a minimum, reckless indifference toward their obligations to report business income to the Chapter 13 Trustee. The property Defendants concealed was property of their Chapter 13 estate which should have been contributed toward repayment of Defendants' creditors under their plan. Because the Defendants failed to provide tax returns or file operating reports that would have revealed such income, the Chapter 13 Trustee was prevented from collecting such amounts while they still existed. The Court is convinced, based on the facts and circumstances, that Defendants intended to hinder, delay, or defraud their creditors within the meaning of 11 U.S.C. § 727(a)(2)(B). Instead of using the profits from S & S Joint Venture to pay creditors, Defendants used the funds to improve their home. Finally, as discussed above, the fact that the concealed property does not otherwise constitute property of the Defendants' converted Chapter 7 estate does not prevent the Plaintiff from asserting an action under 11

18

U.S.C. § 727(a)(2)(B) to deny their discharge.

§ 727(a)(6)(A) - Willful Failure to Obey Lawful Court Order

Plaintiff seeks to deny Defendants' discharge under 11 U.S.C. § 727(a)(6)(A) based, in

part, on their failure to provide tax returns as required under the order confirming the

Defendants' chapter 13 plan. Section 727(a)(6) provides, in relevant part:

> The court shall grant the debtor a discharge unless--
>> (6) the debtor has refused, in the case--
>>> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

11 U.S.C. § 727(a)(6).

To prevail under 11 U.S.C. § 727(a)(6), the Plaintiff must prove by a preponderance of the

evidence[11] that "1) the Court issued an order directed at the debtor; 2) the order was lawful; 3)

the order was not one requiring a response to a material question or to testify; and 4) the debtor

refused to obey the order." *Gillman v. Green (In re Green),* 335 B.R. 181, 183 (Bankr.D.Utah

2005). Refusal to obey under 11 U.S.C. § 727(a)(6) requires "more than a mere failure to obey

a lawful court order." *Green,* 335 B.R. at 184. Some degree of willfulness or volition on the

part of the debtor not to obey the order must be present. *Id.*[12] For this reason, inability to

---

[11]*See First Nat'l Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir. 1991)(applying preponderance of evidence standard of proof enunciated by *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112, L.Ed.2d 755 (1991) for dischargeability actions brought under 11 U.S.C. § 523(a) to an action to deny the debtor's discharge under 11 U.S.C. § 727(a)(2)).

[12]*See also, Smith v. Jordan (In re Jordan),* 521 F.3d 430, 434 (4th Cir. 2008)(refusal to comply with court order "requires that the refusal be wil[l]ful and intentional"); *Pereira v. Gardner (In re Gardner),* 384 B.R. 654, 669-670 (Bankr.S.D.N.Y. 2008)("the denial of a discharge under § 727(a)(6) requires that the debtor willfully and intentionally refused to obey a court order.")(citation omitted). *But cf. Hazlett v. Gorshe (In re Gorshe),* 269 B.R. 744 (Bankr.S.D.Ohio 2001)(applying a standard similar to civil contempt, requiring a showing that

19

comply with the terms of an order can negate a claim under 11 U.S.C. § 727(a)(6). *See Morris v. Wright (In re Wright),* 371 B.R. 472, 480 (Bankr.D.Kan. 2007)("A debtor's inability to comply with the order, inadvertence, mistake, or impossibility will ordinarily be insufficient to revoke a debtor's discharge.").   The party seeking a denial of discharge under 11 U.S.C. §727(a)(6) must first demonstrate that the debtor received the order and failed to comply with its terms.  *Jordan,* 521 F.3d at 433 (citations omitted).[13]   The debtor must then explain his or her reason for non-compliance.  *Id.*

The Confirmation Order required Defendants to timely file tax returns and provide copies of the returns to the Chapter 13 trustee.  The Confirmation Order further required Defendants to file operating reports if they engaged in business.  The Defendants received the Confirmation Order and were aware of its terms.   Defendants formed S & S Joint Venture in 2002.   They received profits from its operation, but never filed operating reports in their case.   Defendants failed to provide copies of tax returns for 2003, 2004, and 2005 to the Chapter 13 Trustee and never filed operating reports with the Court.   Plaintiff, has, therefore, met its initial burden of demonstrating that the Defendants refused to comply with a lawful order of the court.

Defendants' explanation for their failure to comply is inadvertence.  Defendant Ronald Standiferd testified at his deposition that he did not realize he was supposed to file operating

_____

the order had definite terms, that the debtor knew of the order, and that the debtor violated the order); *Hunter v. Magack (In re Magack),* 247 B.R. 406, 409-10 (Bankr.N.D.Ohio 1999)(same).

[13]*See also, LaBarge v. Ireland (In re Ireland),* 325 B.R. 836, 838 (Bankr.E.D.Mo. 2005)(stating that "the trustee can establish that the debtor refused to obey a court's order for purposes of 11 U.S.C. § 727(a)(6)(A) if the court mailed the order to the address listed by the debtor on his petition.")(citing *Katz v. Araujo (In re Araujo),* 292 B.R. 19, 24, (Bankr.D.Conn. 2003)).

reports, believing that he was just to report his income on tax returns. Defendants also argue that the Confirmation Order is not a direct order requiring compliance, so that it should not serve as a basis of a claim under 11 U.S.C. § 727(a)(6). A stipulation approved by the court is insufficient to support a claim under 11 U.S.C. § 727(a)(6). *See Hill v. Jefferson (In re Jefferson),* 323 B.R. 767 (denying plaintiff's motion for default judgment under § 727(a)(6) where order at issue was court order granting the parties' stipulation to pay tax refunds to the trustee, but which did not also direct the debtor to perform the stipulation). But in this instance, the Confirmation Order was clear and direct. It directed and required the Defendants to file operating reports and provide the Chapter 13 Trustee with copies of all tax returns. Defendants were aware that they were required to provide copies of the tax returns. *See* Exhibit 43. In fact, they provided a copy of their 2002 tax return in response to the Chapter 13 trustee's First Motion to Dismiss. Yet they never provided the Chapter 13 Trustee with copies of the 2003, 2004, or 2005 tax returns which would have revealed the additional income from S & S Joint Venture, nor did they file operating reports. The Court finds that Defendants' failure to comply with the requirements in the Confirmation Order to provide tax returns was willful.

Defendants alternatively argue that an order issued by the court during the time the Defendants' bankruptcy case was proceeding under Chapter 13 cannot form the basis for a denial of discharge under 727(a)(6). In other words, Defendants argue that only orders issued by the court during the Chapter 7 phase of the proceeding can support a claim for a denial of discharge under 727(a)(6). The Court rejects this argument for the reasons explained above. *Cf. The Provident Bank v. Sharpe (In re Sharpe),* 305 B.R. 571 (Bankr.M.D.Fla. 2003)(denying debtor's discharge under § 727(a)(6) based on debtor's willful and intentional failure to comply with

Case 07-01076-j    Doc 42    Filed 12/17/08    Entered 12/17/08 16:01:24 Page 21 of 25

court orders issued in Chapter 11 case of corporation for which debtor was president, sole officer, and shareholder).

<u>§ 727(a)(4)(D) - Fraudulent withholding of recorded information regarding the debtor's property or financial affairs; and § 727(a)(5) - Failure to Explain Loss of Assets</u>

Because the court finds that there is sufficient evidence upon which to deny the Defendants' discharge under 11 U.S.C. § 727 (a)(2)(B) and/or (a)(6), the Court need not address Plaintiff's causes of action under 11 U.S.C. § 727(a)(4)(D)(fraudulent withholding of recorded information) or (a)(5) (failure to explain loss of assets). Plaintiff's claim that Defendants fraudulently withheld recorded information regarding their property and/or financial affairs relates to their failure to provide tax returns to the Chapter 13 Trustee. Such failure falls more squarely within the parameters of 11 U.S.C. § 727(a)(6), and the Court has, therefore, addressed those facts as they relate to 11 U.S.C. § 727(a)(6). Plaintiff has withdrawn its claim under 11 U.S.C. § 727(a)(5) to the extent it is based upon checks payable to Defendant Ronald Standiferd, individually, in the aggregate amount of approximately $100,000. Plaintiff's remaining claim under 11 U.S.C. § 727(a)(5) relates to Mr. Standiferd's alleged use of S & S Joint Venture funds received in payment of certain contracts. These checks were issued to S & S Joint Venture and deposited in a corporate checking account for Standiferd and Sons, Inc. Defendants' alleged misappropriation of these funds might form the basis of a complaint under 11 U.S.C. § 523, but because the checks were made payable to Defendants' business entity, such funds were never property of Defendants' bankruptcy estate. Defendants' failure to account for a loss of non-estate corporate assets should not serve as the basis for denial of discharge under 11 U.S.C. § 727(a)(5).

<u>Alternatively, Defendants' Bankruptcy Proceeding Can be Dismissed without the Entry</u>

22

Even if the application of 11 U.S.C. § 348(f) serves as an impediment to denial of discharge under 11 U.S.C. § 727(a)(2)(B), dismissal of the Defendants' Chapter 7 proceeding without the entry of a discharge under 11 U.S.C. § 707(a)[14] can function as an appropriate, alternative, remedy. Dismissal under 11 U.S.C. § 707(a) for "cause" is not limited to the circumstances enumerated in the statute. *See Dinova v. Harris (In re Dinova),* 212 B.R. 437, 442 (2nd Cir. BAP 1997)("Dismissal for cause under section 707(a) is not limited to the three examples enumerated within the section.")(citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 94 (1978)(stating that the enumerated list contained in the statute is "not exhaustive, but merely illustrative.")(remaining citations omitted)). Sufficient notice, within the meaning of "after notice and a hearing" as contained in 11 U.S.C. § 707(a), means "such notice and such opportunity for hearing 'as is appropriate in the particular circumstances.'" *Dinova,* 212 B.R. at 452 (construing § 707(a)'s notice and hearing requirement under 11 U.S.C. § 102(1)). "[T]he purpose of 'notice and a hearing' is to enable parties to respond to the facts and law tendered in support of the motion." *Id.* at 444. The facts

---

[14]That section provides:
> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including–
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after hte filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.
>
> 11 U.S.C. § 707(a).

that would serve as "cause" for dismissal are the same facts raised by the Plaintiff in his § 727 causes of action, and which both Plaintiff and Defendants litigated at trial. Defendants had ample opportunity to defend against Plaintiff's allegations. In fact, Defendants advocate that dismissal (albeit of their Chapter 13 proceeding) is the only remedy for a debtor's bad acts taken during a Chapter 13. But the Defendants avoided dismissal of their Chapter 13 case by converting to Chapter 7 in response to the Chapter 13 Trustee's motion to dismiss.

Under these circumstances, the Court finds that no further notice or a hearing is required before the Court may consider whether dismissal under 11 U.S.C. § 707(a) is an appropriate sanction as an alternative to denial of discharge under 11 U.S.C. § 727. *Cf. Blumenberg v. Yihye (In re Blumenberg),* 263 B.R. 704, 716 (Bankr.E.D.N.Y. 2001)(dismissing case under § 707(a) without further notice or a hearing following debtor's conversion from Chapter 11 to 7 after first determining that court could no longer consider party's motion to dismiss under § 1112; dismissal under § 707(a) was based upon a finding that debtor filed his petition in bad faith).

In considering whether a case should be dismissed for cause under 11 U.S.C. § 707(a), the Court must evaluate whether dismissal serves the best interest of all parties in interest. *Dinova,* 212 B.R. at 442 (citing *In re Price,* 211 B.R. 170, 172 (Bankr.M.D.Pa. 1997)(stating that "the court is required to consider the impact the dismissal will have on the various entities and ascertain which direction satisfies the best interest of all parties.")). The Court should consider the totality of the circumstances in order to determine whether a debtor's Chapter 7 proceeding should be dismissed for cause under 11 U.S.C. § 707(a). See *Blumenberg,* 263 B.R. at 715 ("Whether or not the dismissal under section 707(a) is characterized as 'for cause' or for

24

'bad faith', it is clear that either standard requires an inquiry into the totality of the circumstances.") (citing *In re Griffieth,* 209 B.R. 823, 826 (Bankr.N.D.N.Y. 1996)).

Having established that the Defendants willfully concealed their business income and willfully failed to turn over tax returns which would have revealed their business income, the Court finds sufficient cause exists to dismiss the Defendants' Chapter 7 proceeding under 11 U.S.C. § 707(a) without the entry of a discharge. But because the Chapter 7 Trustee has filed a report of no distribution and full administration of estate assets, and because the Defendants' discharge will be denied under 11 U.S.C. § 727, no useful purpose is served by dismissing the Defendants' case without a discharge.

These Findings of Fact and Conclusions of Law are entered in accordance with Rule 7052, Fed.R.Bankr.P. A judgment denying Defendants' discharge will be entered accordingly.

_____

MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: December 17, 2008

COPY TO:

Leonard Martinez Metzgar
Attorney for Plaintiff
PO Box 608
Albuquerque, NM 87103

George M. Moore
Attorney for Defendants
PO Box 219
Albuquerque, NM 87103

25